# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| BLAKELEY TURNER, DAMON BROOKS, DEANDRA SIMPSON, SHAMIYAN WALTON, MICHAEL HARRIES, AND ANITA SIMPSON, *Plaintiffs,* | § § § § § § § | CIVIL NO. 6-19-CV-00642-ADA |
| v. | § § | |
| THE CINCINATTI INSURANCE COMPANY, *Defendant.* | § § § § § § § | |

## ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiffs' Motion for Partial Summary Judgment (ECF No. 10), Defendant's Response and Cross-Motion for Summary Judgment (ECF No. 16), Plaintiffs' Reply (ECF No. 17), Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment (ECF No. 18), and Defendant's Reply to Plaintiffs' Response (ECF No. 20). After having reviewed the parties' briefs, case file, and applicable law, the Court has determined that Defendant's Motion for Summary Judgment should be **GRANTED** for the following reasons.

### I. BACKGROUND

**A. Factual Background**

Plaintiffs in this case bring a coverage claim against the Cincinnati Insurance Company ("CIC") pursuant to a default judgment obtained against CIC's insureds, Ability Holdings, Inc., ATI Enterprises, Inc., and ATI Acquisition Company (collectively, "ATI").

Plaintiffs are students of a Waco trade school that ATI operated. They filed suit on October 14, 2011, alleging violations of the Texas Deceptive Trade Practices Act, breach of contract, and breach of warranty ("Bartlett Lawsuit"). ECF No. 10. On November 7, 2011, counsel for CIC sent a reservation of rights letter and agreed to provide ATI a defense. ECF No. 10. However, there was another suit against ATI filed in Dallas on February 8, 2010 ("Nelson Lawsuit"). ECF No. 16. The Nelson Lawsuit involved plaintiffs who were students of an ATI operated trade school in Dallas and alleged similar causes of action. ECF No. 16. When CIC learned of the Nelson Lawsuit, CIC denied ATI indemnity coverage and withdrew its defense. ECF No. 16.

Soon after, ATI filed for Chapter 7 Bankruptcy. ECF No. 16. On January 1, 2016, ATI's bankruptcy trustee filed a lawsuit against CIC seeking coverage under its policy and costs associated with defending the various lawsuits former ATI students filed. ECF No. 16. ATI's bankruptcy trustee executed a settlement agreement and release with CIC to resolve the claim. ECF No. 16; Doc. 2-6 p. 2 ¶ 3. The bankruptcy court approved the settlement agreement. ECF No. 16.

Plaintiffs moved forward with their claims, and trial was held on June 6, 2019. ECF No. 16. ATI, defunct by the date of trial, provided no defense at trial. ECF No. 16. On June 19, 2019, default judgment was entered in favor of Plaintiffs against ATI. ECF No. 16.

### B. Procedural History

On September 20, 2019, Plaintiffs sued CIC to access ATI's insurance policy. CIC filed a Motion to Transfer Venue, which the Court denied. *See* ECF No. 11 Order Denying Defendant's Motion to Transfer Case, at 12. On January 14, 2020, Plaintiffs filed a motion for partial summary judgment asserting CIC wrongfully denied a defense to ATI in the original lawsuit, and

because of that breach, must now defend against the Plaintiffs' claims in the coverage suit. ECF No. 10. Defendant responded and filed a cross-motion for summary judgment asserting that Plaintiffs had no standing to bring the coverage suit, ATI's settlement and release agreement with CIC bars Plaintiffs' claim, and the policy does not provide coverage. ECF No. 16.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the simple fact that the court believes that the non-moving party will be unsuccessful at trial is insufficient reason to grant summary judgment in favor of the moving party. *Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(C)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v.* Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *See* FED. R. CIV. P. 56; *Matsushita*, 475 U.S. at 586.

### III.   ANALYSIS

Plaintiffs argue CIC wrongfully denied coverage to its insureds and accordingly, breached its duty to defend. ECF No. 10, Pls.' Mot. for Summ. J., at 2 ("Pls.' Mot."). Defendant has three arguments for why it is entitled to summary judgment: (1) Plaintiffs do not have standing to maintain this action because they are merely judgment creditors, and not insureds under the policy; (2) Plaintiffs' claims against CIC have already been released through ATI's previous release of CIC from liability under the policy; and (3) the policy does not provide coverage for the Plaintiffs' claimed damages. ECF No. 16, Def.'s Mot. for Summ. J., at 1–2

("Def.'s Mot."). Because the standing argument is dispositive, the Court will first address whether the Plaintiffs have standing. The Court finds that they do not.

### A. Plaintiffs do not have Standing to Bring this Coverage Action

The parties dispute the proper interpretation of *Great American Ins. Co. v. Hamel* and its application to these facts. In *Hamel*, the Texas Supreme Court delineated the circumstances where an insurance company that wrongfully fails to defend an insured may be bound by a judgment against the insured in a subsequent suit brought by an underlying plaintiff as an insured's assignee. 525 S.W.3d 655 (Tex. 2017). The court stated that, even with an otherwise valid assignment, a judgment would be unenforceable if it did not result from a "fully adversarial trial." *Id*. In *Hamel*, the insured defendant entered into a pretrial agreement with the plaintiff, which eliminated "meaningful incentive" to contest the judgment. *Id*. at 666. Thus, the judgment was not the result of a fully adversarial trial. *Id*. However, because the assignment was valid, the court allowed the plaintiff to relitigate the underlying coverage action to determine damages. *Id*. at 670.

Defendant argues that the assignment is what gave the *Hamel* claimant standing, and without the assignment or judgment from an adversarial trial, the possibility of a coverage suit is foreclosed. Def.'s Mot. at 9. To bolster that point, Defendant emphasizes that the *Hamel* court analyzed the validity of the assignment to the claimants. *Id*. Defendant also points out that *Hamel* was a clarification of *State Farm Fire & Casualty Co. v. Gandy*. *Id*. *Gandy* narrowed the scope of the general rule that an insurer that wrongfully refuses to defend its insured is barred from collaterally attacking a judgment or settlement between the insured and the plaintiff, "under certain circumstances in which the plaintiff seeks to enforce the judgment against the insurer as

the insured's assignee." *Hamel*, 525 S.W.3d 655, 666 (citing *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996).

Conversely, Plaintiffs contend that *Hamel* provides an alternative procedure for when a judgment has been obtained from a non-adversarial trial. ECF No. 17, Pls.' Reply to Def.'s Mot. for Summ. J., at 2 ("Pls.' Reply"). According to Plaintiffs, *Hamel* provides an opportunity for an adversarial trial to pursue a judgment debtor's insurance. *Id*. Plaintiffs further assert that the distinction between judgment creditors and assignees is "senseless." *Id*. However, Plaintiffs cite no legal authority that supports their position that a claimant need not be an assignee, where the judgment is not the result of a fully adversarial trial. Nor do Plaintiffs argue the judgment here was the result of a "fully adversarial trial."

The Court agrees with Defendant on the issue of standing. *Hamel* defined the circumstances in which an insurance company could be bound in a subsequent suit brought by the plaintiff as the insured's assignee, explicitly. David J. Beck, Alex B. Roberts, *Legal Malpractice in Texas Third Edition*, 70 Baylor L. Rev. 213, 398 (2018). The *Hamel* opinion expressed that a claimant against an insurer obtains standing to litigate a coverage trial through either a judgment resulting from a fully adversarial trial or a valid assignment. Here, Plaintiffs satisfy neither requirement to confer standing in this coverage action.

Moreover, case law before the Texas Supreme Court's decision in *Hamel* does not indicate otherwise. *In re Essex Ins. Co.*, 450 S.W.3d 524 (Tex. 2014) (finding claimant lacked standing because it was not a judgment-creditor nor did it have an assignment); *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex. 1996) ("In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff

as defendant's assignee."). Nor does the case law after *Hamel* evidence that standing may arise without a valid assignment or favorable judgment from a fully adversarial trial. *CBX Resources, LLC v. Ace Am. Ins. Co.*, 320 F. Supp. 3d 856 (W.D. Texas—San Antonio 2018) (holding default judgment entered in favor of claimant was not adversarial and therefore not binding); *Landmark Am. Ins. Co. v. Eagle Supply & Mfg. L.P.*, 530 S.W.3d 761 (Tex. App.—Eastland 2017) (rendering for insurers because judgment-creditor had neither an assignment nor was its judgment the result of a fully adversarial trial).

Therefore, the Court must dismiss the Plaintiffs' claims for lack of standing because they are not the recipients of a valid assignment and the judgment upon which they rely is not the result of a fully adversarial trial.

### B. The Policy does not Provide Coverage for this Claim

Although the Court believes the first issue is dispositive in this case, out of an abundance of caution, the Court will also address Defendant's third argument in its Motion for Summary Judgment. Defendant argues that Plaintiffs' claim is not covered under the policy. Def.'s Mot. at 12. Specifically, Defendant argues that the Plaintiffs' claim is not within the scope of the policy's coverage because of the previously filed Nelson Lawsuit. Def.'s Mot. at 12–13.

The policy at issue is a "claims made" insurance policy that provides coverage to ATI's Directors and Officers. Specifically, CIC agreed to pay on behalf of ATI "all 'loss' which the 'company' is required to pay from any 'claim' first made during the 'policy period' . . . against the 'company' for a 'wrongful act.'" Policy, Doc. 1–4, p. 33, § I.C. "Loss," within the meaning of the policy, is "'defense costs' and the total amount of monetary damages when the 'insured' becomes legally obligated to pay on account of any 'claim' for a 'wrongful act' with respect to which coverage hereunder applies . . . " *Id*. at 36, Part I, § IV(E). The policy defined "claim," in

relevant part, as "a civil proceeding commenced by filing a complaint or similar pleading." *Id*. at 35, Part I, § IV.A. Here, the policy period was from December 30, 2010 to December 30, 2011. *Id*. at 27, § I.C. "Wrongful act" in the policy is defined as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted . . . by the 'company.'" *Id*. at 37, Part I, § IV(H).

The policy also provides that when multiple "claims" are "based upon or arising out of the same 'wrongful act' or any 'interrelated wrongful acts,'" such claims "shall be considered a single 'claim.'" *Id*. at 65, Part V, § II(E). The term "interrelated wrongful acts" means "wrongful acts" that "have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events, or transactions." *Id*. at 75, Part V, § XX(D). A claim is deemed under the policy to be first made "when notice of the earliest 'claim' arising out of such 'wrongful act' or 'interrelated wrongful acts' is received in writing by a 'policy insured' or by CIC." Id. at 65, Part V, § II(E). Defendant argues that because the Waco and the Dallas suit are deemed a single claim under the policy provisions, and because the Dallas claim was already made in February of 2010, this lawsuit is not a "claim" first made during the policy period as required by the policy's plain language. Def.'s Mot. at 15.

Plaintiffs argue Texas' "eight corners rule" applies here, which prohibits courts from considering evidence beyond the four corners of the pleadings when deciding whether a duty to defend exists. Pls.' Mot. at 16. Plaintiffs posit because the underlying *Bartlett* petition does not reference the coverage-disqualifying provisions, those provisions constitute extrinsic evidence that this Court cannot consider. Pls.' Mot. at 18. The policy provisions constitute the basis of Defendant's coverage defense. Def.'s Mot. at 12–17. The Court disagrees with Plaintiffs because the Court does not find the rule applicable to CIC's duty to indemnify. *Burlington N. & Santa Fe*

8

*Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 334 S.W.3d 217, 219 (Tex. 2011) ("[T]he determination as to duty to defend is according to the eight-corners rule wherein only the pleadings and the policy language are considered. On the other hand, the insurer's duty to indemnify is determined based on the facts actually established in the underlying suit.") (citations omitted). Thus, the "eight corners rule" does not preclude Defendant's coverage defense.

Defendant claims that this lawsuit arises from the same wrongful acts, or at least a common nexus of facts, with the Nelson Lawsuit. Def.'s Mot. at 12–13. Defendant relies on the fact that the Plaintiffs in each case were all students of ATI schools. Def.'s Mot. at 13. Defendant cites the petitions from the Nelson Lawsuit and the underlying suit here to show that Plaintiffs in both cases complained that ATI misrepresented the quality of its program. *Id*. Plaintiffs in both cases supported their identical complaint with the same allegations: the schools were overcrowded, staffed with unqualified instructors, used inadequate equipment, and insufficient supplies. *Id*. Defendant also points out that the petitions for the Nelson Lawsuit and this underlying lawsuit are carbon copies of each other. *Id*.

Plaintiffs respond by arguing that the two cases involve different ATI schools, different ATI students, different ATI teachers, and different curriculums. Pls.' Reply at 13. In essence, Plaintiffs argue that because the suits involve different schools and people, the claim is still within the policy's scope of coverage.

The Court finds that the two lawsuits are a single claim within the meaning of the policy. In determining whether underlying lawsuits or other proceedings allege interrelated claims under Texas law, courts must read the underlying petitions in light of the insurance policy's provisions. *Reeves Cty. v. Hous. Cas. Co.*, 356 S.W.3d 664, 672 (Tex. App.—El Paso 2011). The Court finds

the Nelson Lawsuit and the Bartlett Lawsuit to be sufficiently related to constitute a single claim under the policy's provisions. *ADI Worldlink, L.L.C. v. RSUI Indem. Co.*, 932 F.3d 369, 376 (5th Cir. 2019) (denying coverage of all employment claims because of an interrelatedness provision deeming all claims arising from the same or related facts to be a single claim under a previous policy, and no notice was given of the first claim during the previous policy period); *John M. O'Quinn P.C. v. Nat'l Union Fire Ins. Co.*, 33 F. Supp. 3d 756, 768 (S.D. Tex. 2014) (finding claims were interrelated whether the petitions filed in both cases indicated the claims contained similar legal and factual allegations arising from a common nexus of fact). Accordingly, CIC is entitled to summary judgment because there is no coverage available for the *Bartlett* Lawsuit under the policy.

IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**. The Court will enter final judgment in favor of Defendant in accordance with this Order. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**SIGNED** this 12th day of March 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE